

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

___

*Benjamin Levin*  
*Assistant United States Attorney*

*970 Broad Street, 7th floor*  
*Newark, New Jersey 07102*

*Direct line: 973-645-2762*

March 17, 2021

Hon. Mark Falk, U.S.M.J.
United States District Judge
U.S. Courthouse
1 Federal Square
Newark, NJ 07101

      Re:    United States v. Steven Brooks
                Mag. No. 21-9067 (CLW)

Dear Judge Falk:

      The Government respectfully submits this letter brief in opposition to Defendant Steven Brooks's request for pre-trial release from federal custody pursuant to 18 U.S.C. § 3142(g). Brooks poses a grave danger to the community—especially children—and his proposed bail package is insufficient to ensure the safety of the public. Brooks has been a schoolteacher in New Jersey for over a decade. As explained below, not only did Brooks's hard drive contain dozens of pornographic videos and images of minors, but it also contained videos of his active recruitment of minors to send him sexually explicit materials. Worse, when some of these minors tried to cut off communication with Brooks, Brooks sent the minors threatening messages to convince them to send him more illicit images. Moreover, given the strength of the evidence in the case and the high likely penalties associated with the charges if convicted, Brooks poses a flight risk. The Court should deny his request for pre-trial release under any conditions.

      Importantly, two of the three pending charges against the Defendant carry a rebuttable presumption of detention: (1) production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), as charged in Count One, *see* 18 U.S.C. § 3142(e)(3)(E); and (2) mailing child pornography, in violation of 18 U.S.C. § 2252A(a)(1), as charged in Count Three, *see id*.

      Brooks has not adequately rebutted the presumption of detention. Detention is warranted given the predatory and exploitive nature and

circumstances of the offense and the history and characteristics of the defendant. Further, the proposed bail package does not sufficiently address the Defendant's risk of flight.

Accordingly, the Government concurs with Pretrial Services' recommendation that the Defendant remain detained.

### I. Background

In January 2021, law enforcement was notified about possible child pornography on an external hard drive belonging to the Defendant. Specifically, on January 28, 2021, law enforcement met with employees of Company-1, which is located in California, regarding an external hard drive that the Defendant had mailed earlier that month from New Jersey to Company-1 to repair a mechanical issue.

Previously, on January 20, 2021, the Defendant sent an email to an employee ("Employee-1") from Company-1 where the Defendant wrote that the Defendant had sensitive and private information on the hard drive that the Defendant was concerned about people at Company-1 having access to. The Defendant sent this email after learning about Company-1's privacy policies, and it demonstrates his knowledge and consciousness of guilt about the child pornography contained in the hard drive.

During the data recovery process on the hard drive, a Data Recovery Engineer who works at Company-1 ("Employee-2") opened a folder and saw numerous thumbnail images which Employee-2 believed to be child pornography. After viewing these images, Employee-2 discontinued the recovery process and contacted the FBI.

On January 28, 2021, law enforcement reviewed a relatively small quantity of media files on the hard drive to confirm the existence of child pornography on it. In its limited review, law enforcement saw copious child pornography on the Defendant's hard drive. Law enforcement then obtained a search warrant and extensively searched the hard drive.

The investigation has further revealed that the Defendant is utilizing a fake online persona ("Fake Online Persona-1") on a social media account ("Social Media Account-1") to solicit nude photos and videos from teenage victims. In the Fake Online Persona-1 folder on the Defendant's hard drive, law enforcement observed photographs of a young person in different folders that were labelled by subject, including names like "Bathing Suits," "Nude," "Partying," and "Skin Pictures." A folder labeled "Clips" contains video files that depict a person engaging in oral sex, a person masturbating, and picture files of a naked person masturbating on a bed. As outlined below, the Defendant used these images and videos to develop Fake Online Persona-1.

2

One of the sub-folders within this folder is entitled with the first name of a male who was under the age of eighteen ("Minor Victim-1") at the time several of the images and cell phone recordings within the folder were made. The folder for Minor Victim-1 contains multiple image files and multiple movie files, including one movie file depicting what appears to be a cell phone recording from Social Media Account-1 that appears to have been recorded in or around October 2019. The video shows that Social Media Account-1 communicated with a username corresponding to Minor Victim-1's social media account on the same social media platform. In the conversation, Social Media Account-1—controlled by the Defendant—sent Minor Victim-1 a video of a person masturbating. Importantly, this video is also contained within the Fake Online Persona-1 folder found elsewhere on the Defendant's hard drive. Thereafter, Social Media Account-1 typed "Cum for me daddy." Minor Victim-1 then sent a video to Social Media Account-1 that depicts Minor Victim-1 masturbating; Minor Victim-1's penis and part of his face are visible in the video.

Another of the sub-folders within the above-referenced "Personal" folder is titled with the first and last name of a male who, based on information in law enforcement's possession, law enforcement believes was under the age of eighteen ("Minor Victim-2") at the time the photos referenced below were taken. There are 37 images within the folder, all of which law enforcement believes depict Minor Victim-2. Three of the images show Minor Victim-2 standing in a bathroom taking a "selfie," or photograph of himself, in the mirror. In the images, Minor Victim-2 is wearing a black t-shirt and no pants. Minor Victim-2's face and penis are visible in at least three images. In two of the three images, Minor Victim-2 is holding his penis up with his hand to make his penis more visible to the images' recipient.

One of the sub-folders within the above-referenced "Personal" folder is entitled with the first name and the first letter of the last name of a male. Based on its investigation, law enforcement believes this male was under the age of eighteen ("Minor Victim-3") at the time that several of the images and videos were taken. There are several images of Minor Victim-3 within that folder, including at least three unique pictures of Minor Victim-3 standing in a bathroom taking a "selfie" in the mirror. In each image, Minor Victim-3 is naked, with his face and penis visible. The folder also contains at least three videos in which Minor Victim-3 was masturbating where Minor Victim-3's face and penis were visible.

Based on the images of child pornography seen on the Defendant's hard drive, the Defendant was charged in a federal Complaint on February 16, 2021 with the following crimes: (1) production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) and 18 U.S.C. § 2; (2) possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2; and (3) mailing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (2). *See* Mag. No. 21-9067.

## II. Procedural History

At his initial appearance on February 16, 2021 before Magistrate Judge Cathy L. Waldor, the Defendant consented to detention without prejudice to file a bail application at a later date. ECF 6.

On or about February 23, 2021, the Defendant presented a bail package with the following conditions: home incarceration at the Defendant's parents' residence; location monitoring; a prohibition on possessing any illicit materials; a prohibition on communication over social media networks or on any electronic device; the surrender of the Defendant's passport; and the posting of an appearance bond.

These conditions, however, will not ensure the safety of the community nor ensure the Defendant's appearance in court. The allegations described above are very serious—they involve the exploitation of children. As described below, the defendant has been a schoolteacher for over a decade, and he personally knew several of the victims in the case. Detention is the only option to ensure the safety of the public and to guarantee the Defendant's appearance in court. His bail request should therefore be denied, and he should remain detained pending trial.

## III. Bail Reform Act

The Bail Reform Act of 1984 highlights two criteria the Court must consider when making determinations of release or detention: (1) risk of flight and (2) safety to the community. When making a determination regarding the eligibility of a defendant for pretrial release, the Bail Reform Act directs the Court to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the person(s), and (4) the nature and seriousness of the danger to any person or the community posed by the Defendant's release. 18 U.S.C. § 3142(g).

Because of the nature of the crimes with which the Defendant is charged, there is a statutory presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community if he is released. *See* 18 U.S.C. § 3142(e)(3)(E). While the government bears the ultimate burden of persuasion, the presumption in favor of detention remains even after the Defendant's production of evidence. The Defendant may rebut this presumption by presenting "some credible evidence forming a basis for the contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). If the Defendant meets the burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence. *See United States v. Perry,* 788 F.2d 100, 114-15

4

(3d Cir.1986). Here, the Defendant has failed to rebut the presumption of detention.

## IV. <u>Argument</u>

### A. The Defendant is a Danger to the Community

The facts and the Defendant's conduct here compel the Defendant's continued detention. First, the strength of the Government's evidence is overwhelming. The Defendant's hard drive indisputably belongs to him. The Defendant sent an email to Company-1 that reflected that he knew what the hard drive contained when he referred to the "sensitive and private information" on his hard drive. Further, the sheer number of images and videos of different minors makes it impossible that they could have existed on the Defendant's hard drive by accident. That point is buttressed by the fact that the Defendant personally knows at least some of the minor victims from his work as a youth instructor and schoolteacher for over a decade. All of these facts strongly suggest that the Defendant knew his hard drive contained sexually explicit photos and videos of minors.

Second, the nature and circumstances of the offenses are very serious, as the charges in the Complaint consist of "crimes of violence." *See* 18 U.S.C. § 3142(f)(1)(A). The charges in the Complaint pertain to conduct involving four minor victims. Since the date of the Complaint's filing, the Government has confirmed the ages of four additional minor victims ("Minor Victim-5," "Minor Victim-6," "Minor Victim-7" and "Minor Victim-8") from sexually explicit content on the Defendant's hard drive. The four additional minor victims are high school students in New Jersey; three of the four high school students had ties to Brooks through his employment activities with children. The Government expects to identify additional minor victims as the investigation continues because there are pornographic images and videos of approximately thirty additional suspected minors on the Defendant's hard drive.

While it is troubling enough that the Defendant has illicit pornographic images and videos of minor victims on his hard drive, the Defendant's conduct and interactions with some of the minor victims are even more alarming. Specifically, Minor Victim-1 knows the Defendant and is a high school student in New Jersey. After Minor Victim-1 blocked Fake Online Persona-1 (controlled by the Defendant) on social media, the Defendant emailed Minor Victim-1 on Minor Victim-1's school email address and harassed him to continue speaking with the Defendant on another social media account. For several weeks, the Defendant threatened to tell other students that Minor Victim-1 was circulating a naked photo of another student if Minor Victim-1 did not communicate with the Defendant and send additional illicit images to him. These threats negatively affected Minor Victim-1 emotional state and damaged Minor Victim-1's academic performance.

Likewise, Minor Victim-6 sent videos and images to the Defendant through Fake Online Persona-1 during the course of their exchanges on social media. During their exchanges, the Defendant sent harassing messages to Minor Victim-6 in an attempt to entire Minor Victim-6 to send additional illicit images.

Third, the proposed bail package is insufficient to prevent the Defendant's access to computers, phones, or other technology that would enable him to try to communicate with the minor victims or other minors. The Defendant's parents' apparent intention to password-protect their electronic devices, rather than removing all electronic devices from their home, is simply insufficient. However, even if all of the electronic devices were removed from the Defendant's parents' home, there is no guarantee that the Defendant will not gain access to another electronic device. Because there is no way to guarantee this circumstance, the Defendant's proposal is insufficient to ensure the safety of the community.[1]

The foregoing facts outline reprehensible, threatening, and permanently damaging conduct that the Defendant repeated time and again with minor victims. The threat he poses to the community at large and to each of the minor victims is sufficiently great to require detention. Because the Defendant has failed to present *any* "credible evidence" that he is not a "threat to the community," he should remain detained. *See Carbone*, 793 F.2d at 560.

### B. The Defendant Poses a Risk of Flight if Released

The Defendant also poses a risk of flight, as the nature and circumstances of the offenses he is charged with are extremely serious. Based on the strength of the evidence, there is a high likelihood of conviction. If convicted, the Defendant is facing a mandatory minimum term of imprisonment of fifteen years on Count One, along with a maximum potential sentence of thirty years in prison, and a mandatory minimum term of imprisonment of five years on Count Three, along with a maximum potential sentence of twenty years in prison. Such high mandatory minimum sentences are incentives to flee, even in a scenario like here where a defendant has no prior criminal history or failures to appear.

---

[1] The concept of "safety of the community" may include non-physical harm. *See United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (*citing United States v. Giampa*, 904 F.Supp. 235, 358 (D.N.J. 1995); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) ("[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act])"; *see also* S. Rep. No. 225, 98th Cong., 2d. Sess. 12, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195 ("The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

Further, based on the Defendant's financial resources, the Defendant has the means to flee if he is released from custody, especially considering that the Government has identified additional minor victims, and any potential Indictment in this case will likely include additional charges on top of what was charged in the Complaint. *See United States v. Abdullahu*, 488 F. Supp. 2d 433, 443 (D.N.J. 2007) ("The fact that defendant may possibly be indicted for other offenses creates another incentive to flee.").

Additionally, while the Defendant has been employed as a schoolteacher and youth instructor for a long time, he is unlikely to return to teaching if he is released during the pendency of this case because of the nature of the charges. The Defendant's lack of employment upon release damages his ties to the community. *See Abdullahu*, 488 F. Supp. 2d at 442 ("It is true defendant had recent steady employment but there is no guarantee that if released he will have a job…It is clear to the Court that defendant has the motive and means to flee if he is released.").

While the Defendant proposes a bail package that includes home confinement at his parents' residence, along with location monitoring, those conditions simply are inadequate to ensure that the Defendant will not flee. The Defendant could remove such a location monitoring device, as electronic monitoring "impedes but does not prevent a defendant from fleeing." *Id; see also United States v. Orena,* 986 F.2d 628, 632-33 (2d Cir. 1993). The presence of the Defendant's immediate family in New Jersey is insufficient to assure his presence at trial. *See Abdullahu*, 488 F. Supp. 2d at 442.

**V.     Conclusion**

      The Government has demonstrated that the Defendant poses a grave danger to the community by clear and convincing evidence. Moreover, the Defendant has not rebutted the statutory presumption of detention here. There are thus no conditions or combination of conditions that will sufficiently protect the community should the Defendant be released. Further, the Government has demonstrated by a preponderance of the evidence that the Defendant poses a flight risk should he be released. The Defendant's request for release should be denied.

                                              Respectfully submitted,

                                              RACHAEL A. HONIG
                                              Acting United States Attorney

                                   By:    Benjamin Levin
                                            Assistant U.S. Attorney

cc:    Alan Zegas, Esq. and Joshua Nahum, Esq., counsel to the Defendant
        (via Email & ECF)